UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARR PETER BROWN, | |
| Petitioner, | |
| v. | CAUSE NO. 3:22-CV-422-JD-MGG |
| WARDEN, | |
| Respondent. | |

OPINION AND ORDER

Marr Peter Brown, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for attempted murder and criminal recklessness under Cause No. 02D06-1312-F1-21. On January 25, 2021, following a trial, the Allen Superior Court sentenced Brown to thirty-five years of incarceration. Pursuant to Section 2254 Habeas Corpus Rule 4, the court must dismiss the petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

In the petition, Brown argues that he is entitled to habeas relief because the prosecution's failure to call the victim's treating physicians as witnesses violated his right to compulsory process. He further argues that he is entitled to habeas relief because the prosecution presented the victim's false testimony. Specifically, he states:

> [The victim] testified that he was shot in the back of his arm, he took off running to try to get out of harm's way, and Brown chased him and shot him in the back of his leg from behind. The medical records indicate that [the victim] had two bullet wounds with no exit wounds: one hole in his bicep; and the other in his pelvic/thigh from the anterior. Someone also

altered the victim's medical records before they were given to me. Both of the victim's wounds were on the left arm and left leg.

Before considering the merits of a habeas corpus petition, the court must ensure that the petitioner has presented his claims "through one complete round of State-court review." *Lewis v. Sternes*, 390 F.3d 1019, 1025-1026 (7th Cir. 2004). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

In the petition, Brown represents that he did not present his claims on direct appeal. Under Indiana law, "if an issue was known and available, but not presented upon direct appeal, it is waived." *Craig v. State*, 804 N.E.2d 170, 172 (Ind. Ct. App. 2004). The record indicates that Brown knew of his habeas claims on direct appeal but that he did not present them. ECF 1; ECF 1-1. More specifically, Brown's filings indicate that, during the pendency of his direct appeal, he reviewed the prosecution's witness list and the victim's medical records and had personal knowledge of the victim's trial testimony and of the witnesses presented at trial. *Id.* Therefore, Brown's claims are procedurally defaulted.

Brown explains that he did not present the compulsory process claim on direct appeal based on appellate counsel's advice that a trial court cannot err by failing to admit evidence that the parties did not submit. A habeas petitioner can overcome a

2

procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in State court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). "Meritorious claims of ineffective assistance can excuse a procedural default." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014).

> According to correspondence attached to the petition, appellate counsel advised:
>
> Harmless error occurs when a judge commits an error ruling on the admissibility of evidence. In this case, there was no evidence that was submitted in your trial. Accordingly, the judge could not have committed harmless error in not admitting medical records into evidence.

ECF 1-1 at 1. While appellate counsel could have articulated his reasoning more clearly, his reasoning for declining to submit an appellate argument regarding the omitted medical records remains sound -- a trial court cannot commit an error by failing to admit an exhibit that was never offered by either party. Consequently, ineffective assistance of appellate counsel does not excuse procedural default.

Brown further asserts that he did not present these claims on direct appeal because he received new evidence after his conviction. It is unclear why Brown believes that he could not have raised his claims on direct appeal given that he had the information necessary to raise such claims during the pendency of his direct appeal. By referencing "new evidence," Brown may be attempting to invoke the actual innocence exception to procedural default. A habeas petitioner can overcome a procedural default

3

by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536–37.

Brown offers as new evidence the victim's medical records, but this new evidence is consistent with the testimony of the victim cited by Brown.[1] Brown speculates that law enforcement altered portions of the medical records based on his personal review of the victim's X-ray results, but, after careful review, the court perceives no medical contradictions in these results that would suggest such misconduct. For example, Brown observes that the X-ray finding for the victim's femur indicates that the "soft tissues surrounding the femur[2] appear unremarkable." ECF 1-1 at 29. He posits that this X-ray finding is problematic because "it is impossible for a bullet to travel through a person's soft tissues without damaging it." But the same X-ray finding goes on to say that "[a] bullet is present overlying the left pelvis, overlying the

---

[1] Brown may also be suggesting that anticipated testimony from the victim's medical doctors constitutes new evidence, but, beyond Brown's speculation discussed herein, there is no indication that such testimony would meaningfully differ from the medical records prepared by these doctors more than three years ago.

[2] A femur is defined as "the long bone of the thigh, articulating with the hip bone proximally and the tibia and patella distally." STEDMANS MEDICAL DICTIONARY.

4

left sacral ala," indicating the medical writer's attempt to distinguish between soft tissues surrounding the femur and the pelvic[3] and sacral[4] areas. *Id.* Separate but consistent X-ray findings for the victim's pelvis scan confirm this interpretation of the medical writer's phrasing and nomenclature. *Id.* at 30. And, plainly, it is possible for a bullet to travel through a non-femur location on a person's body without damaging the "soft tissues surrounding the femur."

Brown also notes the X-ray finding for the victim's pelvis indicating that "[a bullet was] identified in the superior left pelvis, anterior to the superior aspect of the left sacral ala." *Id.* He posits that this finding is problematic because "there cannot be a wound in the posterior and the anterior if there is no exit wound." However, this X-ray finding describes the location of a bullet that remains within the victim's body. Consequently, it is unclear how this finding suggests the presence of an exit wound. Moreover, even if true, these alleged medical contradictions would amount to no more than a slightly different presentation of one of the victim's gunshot wounds. Significantly, at trial, Brown testified that he shot the victim twice, albeit in self-defense. *See Brown v. State*, 175 N.E.3d 364 (Ind. App. 2021). It is thus unclear how these alleged medical contradictions would alter the evidentiary record to the extent that no

---

[3] A pelvis is defined as "the massive cup-shaped ring of bone, with its ligaments, at the inferior end of the trunk, formed of the hip bone (the pubic bone, ilium, and ischium) on either side and in front of the sacrum and coccyx, posteriorly." STEDMANS MEDICAL DICTIONARY.

[4] A sacrum is defined as "the segment of the vertebral column forming part of the pelvis; a broad, slightly curved, spade-shaped bone, thick above, thinner below, closing in the pelvic girdle posteriorly; it is formed by the fusion of five originally separate sacral vertebrae; it articulates with the last lumbar vertebra, the coccyx, and the hip bone on either side." STEDMANS MEDICAL DICTIONARY.

reasonable juror would have found Brown guilty beyond a reasonable doubt. Consequently, Brown offers no valid basis to overcome procedural default.

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must consider whether to grant or deny a certificate of appealability. To obtain a certificate of appealability when the court dismisses a petition on procedural grounds, the petitioner must show that reasonable jurists would find it debatable (1) whether the court was correct in its procedural ruling and (2) whether the petition states a valid claim for denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, there is no basis for finding that jurists of reason would debate the correctness of this procedural ruling or for encouraging Brown to continue pursuing his claims in federal court.

For these reasons, the court:

(1) DISMISSES the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases because the claims are procedurally defaulted;

(2) DENIES Marr Peter Brown a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and

(3) DIRECTS the clerk to close this case.

SO ORDERED on June 13, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT